### THRASH VS. JOHNSON.

1. Under the statute authorising the form of action as a substitute for the action of ejectment,* and the practice which has grown up under it, a declaration for trespass *quare clausum fregit*, which contains no averment of title, or assertion that the action is instituted to recover possession of, and try titles to, the lands described—may be allowed.

2. An assignment by an instrument not under seal of lands purchased of the United States, the evidence of which purchase, is the certificate of final payment by the assignor to the receiver of public moneys in the land office, is not sufficient to sustain an action of trespass by the assignee.

Error to the Circuit court of Chambers county.

Trespass to try title. The plaintiff, Johnson, complained of defendant, Thrash, in a plea of trespass *quare clausum fregit*—for that defendant, on the day mentioned, and on divers other days and times, between that day and the day of the commencement of the action, with force and arms, &c. at to wit, in the county aforesaid, broke and entered the close of said plaintiff, lying and being in the county aforesaid, and being a certain piece, parcel or allotment of land, to wit, the south east quarter of section number twenty-

---

*Aik. Dig. 265, s. 41.

nine, in township number twenty-three, and in range number twenty-eight, and then and there, to wit, in the county aforesaid, on the day and days mentioned, and in and on the said plaintiff's close, cut down, killed, burned and otherwise destroyed a large number of oak, pine and other trees, to wit, two hundred trees, of great value, to wit, of the value of four hundred dollars, which were then and there growing and being, and also destroyed, cut down, prostrated and burnt, the underwood, bushes, grass, herbage, pasturage and other growth, the produce of and growing out of and appertaining to the said close, of great value, and also then and there destroyed the remaining timber of the said close, then and there yet being, causing the same to be converted into buildings, and enclosures liable to rot, and greatly encumbered the said premises therewith, and converted the same to his own use, without the leave or license of, and against the will of the said plaintiff, for a long space of time, to wit, from the day of the first trespass, until the commencement of the suit, thereby greatly hindering, preventing and putting it out of the power of the said plaintff to have the use, benefit, and enjoyment thereof, in such manner as he might and otherwise would have had: And also for that, the said defendant, on a certain other day and at divers times and days, between that day and the day of the commencement of the suit, with force and arms, &c. broke and entered a certain other close of plaintiff, situate, lying and being in the county aforesaid, and being a certain piece, parcel or tract of land, to wit, the east and west halves of the south east quarter of section number twenty-nine, in township number twenty-three, and in range number twenty-eight, and took and retained the possession thereof, without the leave or license, and against the will of the said plaintiff, and prevented and hindered the said plaintiff, from having the possession and occupation thereof, and continued to prevent and hinder him said plain

tiff from having the possession thereof, and kept him out of the possession thereof for a long space of time and during that time took, had and received to the use of him the said defendant, all the issues, rents, profits, emoluments, benefits and privileges, growing out of, the said close of said plaintiff, last described, being of great value, to wit, of the value of four hundred dollars; and also on the said close, cut down and converted to his own use, divers oak and other trees, and trod down and destroyed all the grass and bushes then growing on the same, being of great value, to wit, of the value of three hundred dollars, whereby the said plaintiff not only lost the issues and profits growing out of the said last described close, as well as the timber, grass and bushes thus destroyed, but was deprived of the use and means of cultivating the same, by reason of the wrongful occupation of the same by the said defendant. And also for that, defendant on another day, and at divers times and days, from that to the commencement of the suit, with force and arms, &c. broke and entered, a certain other close of said plaintiff, situate, lying and being in the county aforesaid, being a certain piece or parcel of land, to wit, the south east quarter of section number twenty-nine, in township number twenty-three, and in range number twenty-eight, and ejected, expelled and amoved him said plaintiff, from his possession and occupation thereof, and kept and continued him the said plaintiff, so expelled and amoved for a long space of time, and during that time took, had and received to the use of him said defendant, all the issues and profits growing out of said close, being of great value, whereby said plaintiff, during all the time aforesaid, not only lost the issues and profits accruing from his said last described close, but was deprived of the use and means of cultivating the same, to wit, in the county aforesaid. And other wrongs and enormities to him then and there did, to the great damage of plaintiff,

and also contrary to the provisions of the statute in such case made and provided, and against the peace and dignity of the State, &c.

To this declaration, there was filed by defendant a plea in abatement, to wit, that the endorsement on the copy writ served on defendant, described the action as brought to recover possession of the south east quarter of section twenty-nine, township twenty-three, and range twenty-seven, which plea was verified by the affidavit of defendant.   Defendant also suggested to the court, that he, the defendant, and those persons whose estate he had in the lands sued for in the action, had enjoyed adverse and peaceable possession of the lands, for more than three years next before the commencement of the suit: and that he and the persons whose estate he had in the lands, had made permanent and valuable improvements on the lands, during the time they had enjoyed adverse possession of said lands.   To the pleas, there were replications and issues to the country.

And at the April term, eighteen hundred and thirty-seven, came the parties, and a jury of good and lawful men, who being elected, &c. on their oaths said, they found for the plaintiff one hundred and fifty dollars, as his damages for the detention of the land in the declaration mentioned, and possession of the land and premises:   It was therefore considered by the court, that the plaintiff recover of the defendant, the sum so assessed by the jury, together with the land and premises, and also his costs in that behalf expended, for which execution might issue, &c.

Before the case was submitted to the jury, a bill of exceptions was preferred, which stated, that on the trial of the cause, the plaintiff produced and read to the jury, a certificate and an assignment thereon, in the following words, viz:

"Pre-emption Act, 1834.  
Receiver's Office at Montgomery, Ala.  
No. 4583—April 25th, 1836.

"Received from Eli Naron, of Chambers, the sum of one hundred dollars and thirty-four cents, being in full payment for the west half south east quarter of section number twenty-nine, in township number twenty-three, of range number twenty-eight, containing 80 27-100 acres, at one dollar and twenty-five cents per acre.  $100 34.

"N. E. Benson, Receiver,

Land Office, Montgomery.

"Endorsement—For value received, I, Eli Naron, of Chambers county, do hereby assign, transfer and set over, unto Willis Johnson, of Chambers county, all my right, title, claim and demand, to a tract of land purchased by me on the 25th April, 1836, as per Receiver's receipt, No. 4583, designated as the west half of the south east quarter of section number twenty-nine, in township number twenty-three, of range number twenty-eight, situate in the district of lands subject to sale at Montgomery, and request that a patent may be issued to said Willis Johnson, his heirs or assigns.

Witness my hand, this twenty-fifth day of June, 1836.

his

Eli ✕ Naron.

mark.

"Acknowledged before me, 25th day of June, 1836.

"Thomas F. Nolan, J. P."

The plaintiff proved the hand writing of N. E. Benson, the receiver of the land office, and also proved by Nolan, the subscribing witness, that Eli Naron executed the assignment on the day therein mentioned. The defendant objected to the reading of these papers, but the court overruled the objection. The plaintiff did not prove any demand of possession, or

any notice to the defendant to quit, previous to the bringing of the action. The defendant proved, that he had been in possession of the land before it was entered. The defendant prayed the court to charge the jury, that the assignment from Naron to the plaintiff was void, and that as no demand of possession, or notice to quit, was proved, the plaintiff was not entitled to recover damages for the detention and occupation of the land by the defendant, except from the time the action was commenced: which charges, the court refused to give, but charged the jury that the assignment was valid, and that the plaintiff was entitled to recover damages for the detention and occupation of said land, from the date of the assignment from Naron to the plaintiff.

And the plaintiff in error here assigned for error, the exceptions contained in the bill as above set forth.

*Peck*, for the plaintiff in error, said—The declaration in this case, alleges no *title* in the plaintiff below, neither does it allege that the action is brought to *try titles and recover possession;* and it is confidently insisted, that for these defects in the declaration, the verdict and judgment for *possession* must be held erroneous. If the court below had rejected as surplusage, that part of the verdict which related to possession, and had rendered judgment only for the damages, the question would have been a different one. It is only necessary to refer to Bacon's Abridgment (Title Verdict, N.) to show that the court will reject that part of a verdict, which finds a thing that is not in the issue. The case of *Ervin* vs. *Ferguson*, 1 Stewart's Rep. 37, is likewise in point: the complaint alleged a forcible detainer, and the verdict found an unlawful detainer, and it was held that the verdict was not responsive to the issue, and therefore bad. It is conceived that there would be no greater absurdity in a jury's finding a defendant guilty of the offence charged in an indictment, and likewise of another offence of greater magnitude, when the indictment only

charged one single offence, and then for the court to proceed to pass sentence for both offences, than there would. be in sustaining the judgment for *possession* in. this case.   The statute which created the action of trespass to try titles, provides that the plaintiff shall endorse on his writ, that the action is brought as well to try titles, as to recover damages.  It is silent as to the form of the declaration, but it cannot be contended, that by complying with this requisition of the statute, the form of the declaration is thereby rendered immaterial.   If this was so, why have any declaration at all?   But the authorities are abundant, that the declaration is an amplification of the writ; that it must set forth, with legal certainty, all the facts, which in point of law, constitute a cause of action in the plaintiff.   A plaintiff may sue out his writ generally, and declare as executor, but he cannot sue out his writ as executor; and declare generally; he may narrow, but he cannot widen the demand specified in the writ.

Here we do not complain of the variance between the writ and declaration; we admit they had a right to claim *less* in their declaration than they did in their writ; but we hold that by filing a declaration merely for damages, and without alleging any title in the plaintiff below, they have *abandoned* their claim to possession; and the jury and court had no authority to jump over the declaration, and take the writ alone, as the basis of their proceedings.   It is remarkable, that the declaration does no where say one word about trying titles.   In the commencement, it says, "Willis Johnson complains of Valentine Thrash in a plea of trespass *quare clausum fregit.* 'The declaration in the case of Simmons vs. Augustin, was drawn by an eminent and experienced pleader.   In one count, it was alleged that the plaintiff was *seized in fee simple*; in another, that she was *seized in her demesne as of fee*; and in all the counts, it was averred that she sued as well to try titles, as to recover possession and damages; and after the jury came into court, their verdict was altered by the order of the court,

so as to find the *title* in the plaintiff. It is believed that these things are regarded by the bar, as matters of sub·stance, and have long been so regarded in the older settled parts of the State.

The statute of eighteen hundred and twenty-four, providing that no defect in the pleadings, not previously objected to, shall set aside a judgment, provided there is a substantial cause of action contained in the declaration, cannot apply to this case; because the declaration is good as far as it goes, and if the verdict and judg·ment had not gone further than the declaration, we might not have any cause of complaint. I do not contend that it is necessary, in all cases, to aver that the plaintiff is seized in fee simple, or in his demesne as of fee. It has been determined in this court, that a present right of entry and possession is sufficient to maintain the action of trespass to try titles, and if a plaintiff were to allege in his declaration, that he had a title which gave him a present right of entry and possession; it might possibly be held sufficient. But when he alleges no title at all, it would seem to be perfectly clear, that a judgment for possession cannot be sustained. But upon the supposition that I am wrong in this position, the absence of any averment in the declaration, that the action was brought to try titles or recover possession, is a more fatal defect. If this judgment for possession is sustained, how shall a man know when he is sued for possession, and when he is only sued for damages? How shall he know when to bring his title papers, and when not to do so? Certainty in declarations, is said to be necessary for three reasons: 1st. That the defendant, knowing what he is called upon to answer, may be able to plead a direct and unequivocal plea: 2d. That the jury may be able to give a complete verdict upon the issue: and 3d. That the court, consistently with the rules of law, may give a certain and distinct judgment upon the premises. In this case, if the court and jury had confined their inquiries to the matters embraced by the declaration, the question whether the plaintiff was

entitled to the possession of the land, was not in issue; and if this judgment is affirmed, the rule that certainty is necessary, as well as the reasons for that rule, may be considered abrogated, as far as the action of trespass to try titles is concerned. It will be borne in mind, that no plea but the plea of not guilty, is filed in this case. If the plea of *liberum tenementum* had been filed, there would have been greater plausibility in contending that the issue was on the title; but if this plea had been filed, it would have availed nothing, because it is a good plea in an ordinary action of trespass *quare clausum fregit:*—The suggestion of adverse possession, filed by the defendant below, is not a circumstance from which the Supreme court can judicially know, that the issue was on the title; because the Supreme court, if it presumes that the defendant offered evidence in support of his suggestion, must presume that the court below rejected that evidence as irrelevant. But suppose he did offer it, and failed in proving it,—and suppose further, that the suggestion of adverse possession is taken by the Supreme court as conclusive evidence that the defendant below *thought* he was defending an action of trespass to try titles, and that the court and jury were laboring under the same erroneous impression: Does this in any degree alter or enlarge the issue formed by the pleadings? That issue was guilty or not guilty of a trespass *quare clausum fregit.* There is a case cited in 7 Bacon's Ab. 22, taken from 3 Leon, 80, called Kepy's case, where the jury found the issue for the plaintiff, but also found "that the estate for life reserved to the defendant, was without impeachment of waste," which would have been a good defence, if it had been pleaded; but the court said "that as the defendant did not avail himself of the privilege of being dispunishable of waste by pleading it, the jury (it not being in issue) had nothing to do therewith; for which reason, that which is found concerning it, ought to be rejected as surplussage." In the case cited, the omission was on the part of the defendant; in the case before the court,

it is on the part of the plaintiff. In both cases, the jury found what was not in the issue; and it is believed that there is not only as great, but a greater necessity for *plaintiffs* to set forth every material fact in their declarations, than there is for *defendants* to embrace all their matters of defence in their pleas. The fact that the plaintiff's evidence of title is set out in the bill of exceptions, cannot cure the defect in the declaration, because the declaration, the verdict and the judgment, all embrace a whole quarter section, when the bill of exceptions sets out a title to only a half quarter section. Other reasons might be mentioned, but this is deemed sufficient. It is admitted, that many defects may be cured by a verdict, and that if a good title is defectively described, it is cured by a verdict; "but if the plaintiff wholly omits to state his title, there is *no room for presumption*"—Douglass' R. 683. A verdict does not cure a mistake in the nature of the action—*Marine Ins. Com. of Alexandria* vs. *Young*—1 Cranch, 332. "The omission of alleging a matter in the pleadings, which is essential to the action, is never cured by a verdict,—7 Bac. Ab. Verdict, X. I have noticed the case of *Moore* vs. *Coolidge*, in 1 Porter's Rep. 280, in. which it is said that the proper remedy in that case, would have been a motion for a new trial in the court below, and perhaps it will be "doing sufficient homage to the maxim, *stare decisis*," to acknowledge the authority of that decision, when another case of precisely the same nature shall arise; but if the jury had given a verdict in that case, for more damages than were laid in the declaration, or if in addition to the verdict for the money, they had gone further, and found that the defendant had converted to his own use, a negro belonging to the plaintiff, it is hardly presumable, that the Supreme court would have sustained the judgment, even if it had "been rendered in strict pursuance of the verdict."

But admitting that the declaration contained every essential allegation, it is earnestly contended that the verdict is defective, because it does not find the *title* in the

plaintiff. A verdict which does not find the matter in issue *expressly* and with *certainty* is bad. In an action of this kind, the title is nearly the only thing that is in issue; but the jury found for the plaintiff the *possession*, and not the title. He that holds a bond for titles, is in most cases equitably entitled to possession, at least would be in the opinion of most petit juries; and yet a bond for titles would not be a sufficient title to recover upon in an action of this kind. Suppose a jury in a capital case were to find that the prisoner should be hung; would the court take it upon itself to pass sentence?

But the assignment from Naron to defendant in error was void, because the act of Congress of twenty-ninth May, eighteen hundred and thirty, declares all assignments before the issuance of patents to be so. The act passed nineteenth June, eighteen hundred and thirty-four, revives the act of eighteen hundred and thirty, and provides that it shall remain in force two years; and the assignment from Naron bears date within the two years. The act of eighteen hundred and thirty-two, is not (as has been supposed) revived by the act of eighteen hundred and thirty-four. This act (1832) only relates to persons who had taken pre-emption rights under the act of eighteen hundred and thirty, and it would be a most strained and latitudinous construction, to say that "the revival of the old pre-emption law is to be considered as embracing the provisions engrafted thereon by the act of eighteen hundred and thirty-two." The act of eighteen hundred and thirty-two does not extend to any subsequent act which Congress have or may pass; and the presumption upon which this law was enacted, was, that the danger of injustice or oppression contemplated by the old law, had by *that time* ceased—*McElyea* vs. *Hayter*, 2 Porter, 153. But suppose that by an equitable and far-fetched construction, it is admitted that the provisions engrafted upon the old law by the act of eighteen hundred and thirty-two, are to be considered as revived by the act of eighteen hundred and thirty-four, if the Supreme court, in the case cited above, has cor-

rectly interpreted the intention of Congress in passing the act of eighteen hundred and thirty-two, their intention and presumption was, that in *two years*, the pre-emption claimants had been sufficiently informed of their rights, to be placed beyond the reach of speculators; why not then give to pre-emption claimants under the act of eighteen hundred and thirty-four, the term of *two years* to become informed of their rights? This construction seems fairly deducible, from the fact that the act of eighteen hundred and thirty-four, expressly provides that the old law shall remain in force *two years*. It is also insisted that the assignment should have been under seal, because it is believed to be a principle of the common law, that no *legal* interest in real estate can pass by writing not under seal; and although the statute making certificates evidence of title in certain cases, uses the word *assigns;* that word must mean such an *assignment* as would be valid to pass an interest in lands at common law. It will be remembered, that the bill of exceptions shows that the evidence of title offered by the plaintiff below was objected to, and the objection overruled by the court.

GOLDTHWAITE, J.—The endorsement on the writ discloses, that this action is brought to recover possession of, as well as to try titles to, the land alleged to have been trespassed on.

The declaration is in the usual form for a trespass *quare clausum fregit*, and contains no averment of title; nor is the assertion made therein, that the action is instituted to recover the possession of, and to try the title to, the land described. Thrash, to this declaration, pleaded not guilty; and on the trial, a verdict was returned by the jury in favor of the plaintiff Johnson, "for one hundred and fifty dollars damages, for the detention of the land in the declaration mentioned, and possession of the land and premises." On this verdict, judgment was rendered for the recovery of the damages assessed with the land and premises.

One of the assignments of error, questions the regularity of this form of proceeding, when applied to a suit for the recovery of land, and it is insisted that the declaration does not disclose such a state of facts as will authorise the court to render a judgment for the recovery of the land. It is true, that independent of the statute authorising this form of action as a substitute for the action of ejectment, this verdict and judgment would be irregular; but under the statute, and the practice which has grown up in relation to it, a different rule must prevail. The act of assembly* directs the plaintiff to endorse on the writ in an action of trespass, that the suit is brought as well to try title, as to recover damages, and is silent as to the form of the declaration. We understand that in many sections of the State, the form of declaring pursued in this case has been customary, and we do not feel warranted now to abrogate this practice, as no inconvenience can arise from allowing it. The objection, that parties will not be informed by the pleadings of the true issue formed between them, is more specious than sound, for the defendant is advised by the endorsement on the writ what he is required to defend, with much more certainty, than he was by the declaration in the action of ejectment. This assignment of error cannot avail the party.

On the trial of the cause, a bill of exceptions was sealed by the court, from which it appears that the title of the plaintiff below had its foundation in a certificate of final payment, issued by the receiver of public moneys at Montgomery, and shewing the purchase of the land in controversy, by one Eli Naron, from the United States, and an assignment of the land by an instrument not under seal to Johnson.

In this aspect, the case is precisely similar to the one of *Ansley* vs. *Nolan*, decided at this term, and on its authority, the judgment of the Circuit court must be re-

---

* Digest, 265, s. 41.

versed, and as the plaintiff may have some other and different title to the land than is now disclosed, the case is remanded for further proceedings.

It will be perceived, that we have not adverted to one of the positions assumed by the plaintiff in error, to wit, that the assignment of a pre-emption right before the issuance of a patent for the land is void under the act of Congress. We do not consider this question as arising out of the evidence before the court below, and therefore the expression of any opinion on it would be a departure from the usual practice of this court. Before this question can be raised, it must appear with certainty and precision, that the title to the land was derived from the United States under the act of Congress referred to.